## Leiper *versus* Thomson and Castner.

| 60 | 177 |
| 201 | 189 |

| 60 | 177 |
| 37SC | ²201 |

| 60 | 177 |
| f39SC²328 | |

1. A sale under a judgment against the personal representative of a decedent, without joining the widow and heirs, and without a scire facias against them, unless in exceptional cases, will not pass a good title.

2. A testator devised his real estate to trustees (the same persons being his executors), to sell when all his children came of age and divide the proceeds amongst his wife and children. This direction was a conversion, and the property passed to the devisees as personalty.

3. The devise was not of a naked power, but of a power coupled with an interest and broke the descent.

4. Any delay or postponement of the conversion did not change the principle: at the death of the testator the realty *eo instanti* passed as personalty.

5. The requirements of the 34th sect. of Act of 1834 (Decedents) for notice to widow and devisees are not positive independently of all circumstances in order to a valid sale of the real estate on a judgment against personal representatives;—the invalidity occurs when the attempt is to sell "the real estate of such widow or devisees."

6. When the realty is converted by direction of the testator, the widow, &c., have an interest in it only as personalty, unless they elect to continue it as realty.

January 8th 1870. Before THOMPSON, C. J., READ, AGNEW and SHARSWOOD, JJ. WILLIAMS, J., at Nisi Prius.

Certificate from Nisi Prius: No. 257, to January Term 1869.

This was an amicable action and case stated, in which John Thomson and John Castner were plaintiffs and Thomas J. Leiper was defendant.

The facts shown by the case were as follows:—

Albert Coffin, of Delaware county, died in December 1854, having made his will, whereby, among other things, he devised and provided as follows:

"As to all the rest and residue of my estate, real and personal, wheresoever and whatsoever, I do give, devise and bequeath the same unto my trustees hereinafter named, their heirs, executors, administrators and assigns, to and for their sole use and behoof, under and subject to the following uses and trusts nevertheless.

"First, as to that portion of my real estate situate in the late district of Southwark (describing it) I direct my said trustees, hereinafter named, to sell all the same for the best price that can be obtained therefor, and, to that end, to make the needful assurances in the law to convey the same to the purchasers thereof, and the proceeds thereof to apply to pay off the claims now existing against my property where I now live in the town of Chester and county of Delaware.

"Second. And as to the rest of my estate, I desire that my trustees hereinafter named should hold the same until all my children shall have arrived at the age of twenty-one years, when I do direct my said trustees, their successors, heirs, executors, admin-

10 P. F. SMITH—12

[Leiper *v.* Thomson.]

istrators and assigns, to sell the same for the best price that can be obtained, and the proceeds to divide among my wife Margaret and my children, Mary Jane Coffin, Margaret Coffin, Albert Coffin, William Coffin and Catharine Coffin, share and share alike."

Samuel L. Coffin and Christian Hines were appointed executors and trustees.

The testator, at the time of his death, was seised in fee of a certain messuage, &c., containing about four and a half acres of land, subject to a mortgage dated June 9th 1853, by Jeremiah W. Flickwir to Crossman Lyons, for securing the payment of $2000.

On the 22d of May 1854 a judgment was entered in the Common Pleas of Delaware county in favor of Jeremiah W. Flickwir against Albert Coffin for $275, which was a lien on the premises above described at the time of Mr. Coffin's death.

On the 28th of May 1855 guardians were appointed for the children of Albert Coffin who were under age at the time of his death.

On the 21st of December 1855 Christian Hines renounced his appointment as executor and trustee, and Samuel L. Coffin, the remaining executor and trustee, died in February 1856. On the 8th of July ensuing Charles D. Manley, Esq., was appointed trustee under the will, and on the 20th of August 1856 letters of administration with the will of Albert Coffin annexed were granted to Mr. Manley.

On the 22d of October 1856 Christian Hines brought suit in the Common Pleas of Delaware county against "Charles D. Manley, administrator cum testamento annexo of Albert Coffin, deceased," for the recovery of a debt due by the testator. The widow and heirs were not made parties to this proceeding. Judgment was obtained by Hines on the 22d of November 1856.

On this judgment a fi. fa. issued to February Term 1857, was returned "levied on lands condemned." The lands on which the levy was made were those described above. Under a vend. ex. the above-mentioned land was sold to the plaintiffs, John Thomson and John Castner, for $475, and on the 25th of August 1857 the sheriff executed a deed to them for the same.

The land was sold subject to the mortgage of Flickwir. The proceeds of sale were duly distributed. The purchasers afterwards paid the mortgage of Flickwir to Lyons, and it was satisfied November 3d 1857.

On the 25th of June, A. D. 1866, Thomson and Castner conveyed the lot of ground purchased at the sheriff's sale to George Baker and Thomas J. Leiper, in fee for the consideration of $5500, and on the same day Baker and Leiper executed a purchase-money mortgage of the premises to Thomson and Castner for

[Leiper *v.* Thomson.]

$4000. George Baker afterwards conveyed his moiety of the premises to Thomas J. Leiper in fee, subject to the last-mentioned mortgage.

" If the court shall be of opinion that, under the circumstances, a good and marketable title in fee simple to the above-described premises was vested in Thomas J. Leiper, by the conveyances above recited, then judgment is to be entered for the plaintiffs in the sum of $4000, as upon an amicable writ of scire facias upon the said last-mentioned mortgage; but if, on the contrary, the court shall be of opinion that the plaintiffs acquired no good and marketable title to the said premises under the said sheriff's sale, then judgment in the same form is to be entered for the defendant."

The judge at Nisi Prius entered judgment for the plaintiffs.

The defendant removed the case into the Supreme Court, and assigned for error the entering judgment in favor of the plaintiffs below, and in deciding that a good and marketable title in fee simple to the premises in question was vested in the said plaintiffs.

*J. A. Clay,* for plaintiff in error.—The Act of February 24th 1834, § 34, Pamph. L. 79, Purd. 288, pl. 100, requires notice to the widow and heirs of a decedent; they not having been parties in this case the purchasers took no title: McCracken *v.* Roberts, 7 Harris 390; Keenan *v.* Gibson, 9 Barr 249; Benner *v.* Phillips, 9 W. & S. 13. The provision of the act is to enable the widow and heirs to contest the *debt*, not the *lien* only: Sample *v.* Barr, 1 Casey 457; Kessler's Appeal, 8 Id. 390; Soles *v.* Hickman, 5 Id. 342; Murphy's Appeal, 8 W. & S. 165; Atherton *v.* Atherton, 2 Barr 112.

*E. M. Paxson,* for defendants in error.—The direction in the will to sell worked a conversion: Allison *v.* Wilson, 13 S. & R. 330; Morrow *v.* Brenizer, 2 Rawle 185; Burr *v.* Sim, 1 Whart. 252; Reading *v.* Blackwell, Bald. 166; Parkinson's Appeal, 8 Casey 455; Craig *v.* Leslie, 3 Wheat. 563; Willing *v.* Peters, 7 Barr 287. The conversion took place at the death of the testator: Rinehart *v.* Harrison, Bald. 177; Beauclerk *v.* Mead, 2 Atk. 167; Fletcher *v.* Ashburner, 1 Lead. Cas. in Eq. 800 (534), Law Libr. vol. 63. A mortgage or judgment on such interest would not create a lien: Gray *v.* Smith, 3 Watts 289; Brolasky *v.* Gally's Ex'rs., 1 P. F. Smith 509; Allison *v.* Wilson, 13 S. & R. 333; Morrow *v.* Brenizer, 2 Rawle 185; Stuck *v.* Mackey, 4 W. & S. 196; Stewart *v.* Montgomery, 11 Harris 410.

The opinion of the court was delivered, January 18th 1869, by

THOMPSON, C. J.—The question at Nisi Prius in this case was, whether, under the facts of the case stated, a good and valid title

[Leiper *v.* Thomson.]

to the property mentioned in it passed to the purchaser at sheriff's sale; the sale having been made by process on a judgment obtained against the administrator c. t. a. of the estate of Albert Coffin, deceased, without joining the widow and heirs, and without a sci. fa. to revive the judgment against them. The doubt in the mind of the defendant, a purchaser from the sheriff's vendees upon the validity of the title, arises out of this circumstance. It admits of no doubt that, unless in exceptional cases, such a proceeding is absolutely essential in order to make a good title. This is the express requirement of the 34th section of the Act of 1834. There are many adjudications to this effect under this section, and among them are McCracken *v.* Roberts, 7 Harris 390; Keenan *v.* Gibson, 9 Barr 249; Benner *v.* Phillips, 9 W. & S. 13; Sample *v.* Barr, 1 Casey 457; Soles *v.* Hickman, 5 Id. 342; Kessler's Appeal, 8 Id. 390; and there are numerous other like cases.

But we think the case in hand is exceptional, or rather not within the section. The decedent left a will by which he devised this and other property to his executors and trustees under the will, being the same persons, to be sold and the proceeds distributed as therein provided. The direction to sell was explicit and positive, with full authority to assure and convey the same to purchasers. This direction operated as an equitable conversion of the realty into personalty, and it passed as such to the heirs: Chew *v.* Nicklen, 9 Wright 84. There are numerous authorities to the same effect in the English and in our books, which I need not cite, in addition to the recent case just referred to. This was not a naked devise of a power to sell, but a power coupled with an interest, and therefore it undoubtedly broke the descent to the heirs as realty. Any delay or postponement of the period of actual conversion would not change the principle: Parkinson's Appeal, 8 Casey 455; Reading *v.* Blackwell, 1 Bald. 166; Fletcher *v.* Ashburner, 1 Lead. Cas. in Eq. 800 in note. The Act of 1834, by its terms, must therefore be regarded as not including such a case as this. No title to the land, as land, descended. At the death of the decedent the realty, *eo instanti*, in virtue of his will, passed as personalty, and while by an election of the heirs it might have retained the character of realty, that election was never made, and consequently it remained, until actual conversion, personalty. The section of the Act of 1834 referred to has words, which we quote below, which indicate very clearly what was intended by the provision. After providing for bringing in the widow and heirs or devisees, where it is intended to charge the realty in any action against the personal representatives of the decedent with the payment of his debts, it proceeds to provide that "if notice of such writ shall not be served on such widow and heirs," &c., "the judgment obtained in such action shall not be levied or paid out of the real estate of such

[Leiper *v.* Thomson.]

widow, heirs or devisees." In Murphy's Appeal, 8 S. & W. 165, followed by Atherton *v.* Atherton, 2 Barr 112, it was decided that the proper course was, not to notify the widow and heirs in the first instance, but to bring them in by sci. fa. when the attempt to charge realty was made by the plaintiff in the judgment against the executor or administrator.

It seems to be plain, therefore, that the requirements to notify the widow and heirs or devisees, or bring them in by sci. fa., is not a positive requirement of the statute, independent of all circumstances, in order to a valid sale of the real estate of a decedent on a judgment against the personal representatives. The invalidity for a failure to follow the statute is, by its express provision, declared to occur, where the attempt is, without such notice, to levy the judgment out of the "real estate of such widow, heirs or devisees." Where their real estate is converted by the express direction of the testator and becomes personalty, the widow, heirs and devisees have an interest in it only as converted property, unless they elect to continue its character, where it may be done. In Gray *v.* Smith, 3 Watts 289, it was held that the widow and heirs of property devised to be sold could not mortgage or encumber it by lien at all; citing Allison *v.* Wilson's Ex'rs., 13 S. & R. 330, and Morrow *v.* Brenizer, 2 Rawle 185; that their interest was not realty, but a mere chose in action. We held the same thing in Brolasky *v.* Gally's Ex'rs., 1 P. F. Smith 509. This being the nature of the interest of the widow and heirs in this case, and the requirement not being a statutory requisite of title, independent of any interest of the widow and heirs, as is shown in Stewart *v.* Montgomery, 11 Harris 410, where the judgment was against the executor alone, we are brought to the conclusion that the purchasers at sheriff's sale in this case received a perfectly good title, subject to the mortgage of Flickwir, and that the judgment at Nisi Prius so determining must be affirmed. In this view of the case the question of estoppel need not be discussed; it is conclusive of the real question raised in the case stated.

Judgment affirmed.